UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| USENS, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>CHONGQING JUNMA NEW ENERGY AUTOMOBILE CO., LTD., et al.,<br><br>    Defendants. | Case No. 19-cv-00315-BLF<br><br>**ORDER GRANTING IN PART RENEWED MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF No. 69] |

Before the Court is a renewed motion for default judgment in this action alleging misappropriation of Plaintiff's trade secrets. *See* ECF No. 69 ("Mot."). Remaining defendants Chongqing Junma New Energy Automobile Co. Ltd. ("Junma"), Chongqing ZhongGan WeiShi Electronics Technology Co. Ltd. ("ZhongGan"), Chongqing Bruder Science & Technology Co. Ltd. ("Bruder"), Xiaofei Wu, and Anyu Cheng ("Defendants") have not appeared in this action. The Court previously found this matter suitable for decision without oral argument pursuant to Civ. L.R. 7-1(b). *See* ECF No. 71. For the reasons stated below, the motion is GRANTED IN PART.

**I. BACKGROUND**

Plaintiff filed this action on January 18, 2019, against Junma, ZhongGan, Bruder, Wu, Cheng, Chi Shi, and six other engineers who allegedly left uSens to work at ZhongGan. *See generally* Compl. Plaintiff voluntarily dismissed the six other defendant engineers without prejudice in January 2020. ECF No. 25. Defendant Shi executed a waiver of service and appeared through counsel. ECF No. 8. The Court approved service on the other remaining defendants by e-mail and mail after China's Central Authority could not locate them for service through the Hague Convention. ECF No. 26. After those defendants did not appear, the Clerk entered default against

1   them on June 7, 2021.  ECF No. 52.  On June 28, 2021, Plaintiff notified the Court that it had
2   settled its claims against Defendant Shi and was dismissing those claims, leaving only the
3   defaulting defendants.  ECF No. 60.  The Court approved the dismissal of the claims against Shi
4   and requested that Plaintiff file a motion for default judgment against the remaining defendants.
5   ECF Nos. 61, 63.  Plaintiff filed a motion for default judgment on July 30, 2021, which the Court
6   denied without prejudice on August 17, 2021 because Plaintiff did not submit sufficient
7   information to "prove-up" the damages it sought.  ECF No. 67.  The Court permitted Plaintiff to
8   file a renewed motion with additional evidence of damages.  *Id.*  That motion is now before the
9   Court.

## II.  LEGAL STANDARD

Following an entry of default, Federal Rule of Civil Procedure 55(b)(2) permits a court to enter default judgment against a defendant who has failed to plead or otherwise defend.  *See* Fed. R. Civ. P. 55(a), (b)(2).  "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion to enter default judgment, a court must first find that it has jurisdiction over the action and defendant, and that the party against whom default judgment is requested was adequately served.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Disney Enters., Inc. v. Vuong Tran*, No. 12-5030 SC, 2013 WL 1832563, at *1 (N.D. Cal. May 1, 2013).  A district court then considers seven factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Upon default, all factual allegations in the complaint are taken as true, except those relating to damages.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against it so that he may make a calculated decision as to whether or not it is in his best interest to answer."  *Alameda Cty. Elec. v. Banister Elec., Inc.*, No. C 11-04126 LB, 2012 WL 3042696, at *1 (N.D. Cal. July 25, 2012) (citing *In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008); *see*

2

*also Bd. of Tr. of the Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co.*, No. 08-2038 SC, 2009 WL 1704677, at *3–5 (N.D. Cal. June 17, 2009)). Therefore, a plaintiff seeking money damages must "prove-up" the damages. *Orange Cty. Elec. Indus. v. Moore Elec. Contracting, Inc.*, No. 11-CV-00942-LHK, 2012 WL 4120348, at *3 (N.D. Cal. Sept. 18, 2012). To do so, "a plaintiff is generally required to provide admissible evidence (including witness testimony) supporting damage calculations." *Id.* (citing *Cannon v. City of Petaluma*, No. C 11-0651 PJH, 2011 WL 3267714, at *2 (N.D. Cal. July 29, 2011)).

### III.  DISCUSSION

#### A.  Service and Jurisdiction

As to service, the Court granted Plaintiff's motion for permission to effect service of process on Defendants by alternative means—in this case, email and mail directed at physical addresses. ECF No. 26. Plaintiff filed a proof of service as to those Defendants. ECF No. 27. A sworn proof of service constitutes "prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *G&G Closed Cir. Events, LLC v. Macias*, 2021 WL 2037955, at *2 (N.D. Cal. May 21, 2021) (quoting *Securities & Exchg. Comm'n v. Internet Solns. for Business, Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007)). The Court concludes service was proper based on Plaintiff's sworn proofs of service.

The Court also concludes that it has subject matter jurisdiction over this matter because Plaintiff asserts a federal claim for misappropriation of trade secrets under 18 U.S.C. § 1836. The Court thus has federal question jurisdiction and may exercise supplemental jurisdiction over the pendant state law claims. *See* 28 U.S.C. §§ 1331, 1367. The Court further concludes that, taking Plaintiff's well-pled factual allegations in the Complaint as true, it has personal jurisdiction over the Defendants because they have aimed their intentional wrongdoings at, and have harmed, California through their alleged misappropriation of Plaintiff's trade secrets. Compl., ECF No. 1, ¶ 17.

#### B.  *Eitel* Factors

The Court finds that the *Eitel* factors also support entering a default judgment. Those factors are "(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive

claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471–72.

Several factors support a default judgment. On the first *Eitel* factor, the Court finds that Plaintiff would be prejudiced without a default judgment against the Defendants. Although Plaintiff has voluntarily dismissed a number of unserved defendants and settled with another defendant, *see* ECF Nos. 25, 61, Plaintiff has likely not obtained the full extent of its request for damages through those dismissals and a settlement. The second and third factors support a default judgment. Although only one other defendant actually appeared in this action, he and Plaintiff litigated the case through discovery and a pretrial conference to the eve of trial before settling. This leads the Court to conclude that Plaintiff's claims have at least some merit and that its complaint was sufficiently pled. The sixth factor also supports a default judgment; Plaintiff properly served Defendants pursuant to an order of this Court and there is no indication that Defendants' failure to appear and otherwise defend the action is due to excusable neglect.

The fifth factor is neutral. Because Defendants have not appeared, the possibility of a dispute concerning material facts as to those Defendants is not known.

The fourth and seventh factors weigh against entering default judgment. On the fourth factor, the amount of money that Plaintiff seeks is a significant sum, amounting to the equivalent of over $12.3 million. *See* Mot. at 3–4. The Court finds the request sufficiently "proven-up" for present purposes below, but this factor still weighs against entering a default judgment and will result in a reduction in the amount of exemplary damages awarded. The seventh factor—the strong policy underlying decisions on the merits—also weighs against default judgment, as always.

On balance, the Court finds that the *Eitel* factors favor entry of a default judgment here. Although the amount of money sought in this motion is significant, most of the other *Eitel* factors favor a default judgment. The Court will now consider whether Plaintiff's full monetary request in its motion should be granted.

4

## IV. RELIEF TO BE AWARDED

In the Prayer for Relief in its Complaint, Plaintiff requests injunctive relief, compensatory damages "according to the proof," punitive and exemplary damages, prejudgment interest, attorney's fees and costs of suit, and such other and further relief as the Court deems proper. Compl. ¶ 114(a)-(g). In its motion, Plaintiff seeks ¥25,000,000 in compensatory damages; ¥3,207,534.25 in prejudgment interest (plus ¥4,794.52 per day from October 31, 2021 to the entry of judgment); and ¥50,000,000 in exemplary damages. Mot. at 3. In support of the request in its Motion, Plaintiff provides a declaration from Yue Fei, the Chief Executive Officer of uSens, as the basis for its damages calculations. ECF No. 69-1 ("Fei Decl."). The Court considers each component of Plaintiff's damages request.

### A. Compensatory Damages

Plaintiff requests ¥25,000,000 in compensatory damages. Mot. at 4. In support, Plaintiff provides statements in and evidence attached to the Fei Declaration. According to the Fei Declaration, Plaintiff suffered lost licensing revenue pursuant to a contract between Plaintiff, Jumma, and ZhongGan. Fei. Decl. ¶ 3. Instead of paying for the license to the technology, Plaintiff alleges that ZhongGan and the other Defendants stole the technology. *Id.* The contract, attached to the Fei Declaration as Exhibit A, provided for the following payments to Plaintiff:

- ¥1,000,000 in Nonrecurring Engineering;
- The purchase of at least 100,000 units of Plaintiff's hand gesture control systems in 2018 and 2019; and
- The purchase of at least 200,000 units of Plaintiff's hand gesture control systems in 2020.

*Id.* ¶ 4 (citing Fei Decl. Ex. A). Mr. Fei declares that the hand gesture control systems at issue sell for approximately ¥630, with a profit margin of ¥80. *Id.* ¶ 5. "Most of the margin"—about ¥75—comes from the software. *Id.* Attached to the Fei Declaration as Exhibit B is a contract for the same hand gesture control systems with a different automobile manufacturer, which agreed to license the software for ¥75.47 per unit. *Id.* The remaining ~¥5 is gross margin on the hardware. *Id.* With a profit margin of ¥80 per unit and 300,000 total units over the three years of the

1  contract, plus the ¥1,000,000 for Nonrecurring Engineering, Plaintiff calculates compensatory
2  damages in the amount of ¥25,000,000.[1]

3        The Court finds that the sworn statements in the Fei Declaration and the evidence attached
4  thereto are sufficient to "prove-up" Plaintiff's claimed compensatory damages for the purposes of
5  this default judgment motion. The testimony and exhibits are evidence that could be admitted at
6  trial and are thus appropriate for consideration. *Orange Cty. Elec. Indus.*, 2012 WL 4120348, at
7  *3.

### B. Prejudgment Interest

Plaintiff further requests prejudgment interest on the ¥25,000,000 at a rate of 7% per year. *See* Mot. at 3. "An award of pre-judgment interest in a case under federal law is left to the sound discretion of the trial court." *Twin City Sportserv., Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1310 (9th Cir. 1982). "Awards of pre-judgment interest are governed by considerations of fairness and are awarded where it is necessary to make the wronged party whole." *United States v. Cal. State Bd. of Equalization*, 650 F.2d 1127, 1132 (9th Cir. 1981). Under California law, the prejudgment interest rate is set at 7 percent except in cases involving a contract entered into in 1986 or later, in which case the prejudgment interest rate is set at 10% per year after the breach. Cal. Const. art. XV, § 1; Cal. Civ. Code § 3289.

The Court finds an award of prejudgment interest is warranted at the 7% per year rate that Plaintiff requests. The Court, however, disagrees with Plaintiff that the prejudgment interest should start accruing from January 1, 2020. Fei Decl. ¶ 8. Defendants contracted to purchase 200,000 units of the hand gesture control system in 2020. Thus, the full extent of the damages did not occur until the end of 2020, when Defendants failed to make the purchases obligated by the contract. Accordingly, the Court will apply the 7% interest per year to the ¥25,000,000 in compensatory damages beginning on January 1, 2021. Applying this percentage through the date

---

[1] Plaintiff says that it is foregoing a request for damages related to Defendants' alleged sale of the stolen trade secrets to a different Chinese company. Mr. Fei says the witness for that damage has not responded to Plaintiff's request for information. Fei. Decl. ¶ 7.

6

of this Order results in prejudgment interest of ¥1,932,191.78.

### C.    Exemplary Damages

Plaintiff further requests exemplary damages for willful and malicious misappropriation of trade secrets.  Mot. at 3 (citing Compl. ¶¶ 105, 112).  Both the federal and California statutes allow for but do not mandate an award of exemplary damages in an amount no more than 2 times the compensatory damages awarded in the case of willful and malicious misappropriation.  *See* 18 U.S.C. § 1836(b)(3)(C); Cal. Civ. Code § 3426.3(c).  The Court finds that Plaintiff has adequately pled that Defendants' misappropriation was willful and malicious.  Compl. ¶¶ 105, 112.  Plaintiff has alleged that instead of abiding by the licensing agreement between the parties, Defendants stole the trade secrets at issue, used them without payment, and sold them to a different company.  This adequately pleads willful and malicious appropriation.  *DiscoverOrg Data, LLC v. Bitnine Global, Inc.*, 2020 WL 6562333, at *10 (N.D. Cal. Nov. 9, 2020) (exemplary damages adequately pled).  The Court will, however, reduce the award of exemplary damages to the equivalent of US$1 million.

## V.    FORM OF THE RELIEF

Plaintiff requests that the Court issue judgment in RMB (¥), Chinese currency, because the judgment will likely have to be enforced in China.  Mot. at 3 n.2.  Plaintiff does not provide any authority allowing the Court to issue a judgment in a foreign currency.

"Courts in the United States ordinarily give judgment on causes of action arising in another state, or denominated in a foreign currency, in United States dollars, but they are not precluded from giving judgment in the currency in which the obligation is denominated or the loss was incurred."  Restatement (Third) of the Foreign Relations Law of the United States § 823(1) (1987).  Despite this general principle, federal courts are "sharply divided over the appropriateness of awarding damages in foreign currencies."  *Compare Reliastar Life Ins. Co. v. IOA RE, Inc.*, 303 F.3d 874, 882 (8th Cir. 2002) (quoting and citing the Restatement provision cited above), *with Sainz Gonzalez v. Banco de Santander-Puerto Rico*, 932 F.2d 999, 1003 n.8 (1st Cir. 1991) ("[I]t is a settled principle of Anglo-American law that judgments for money damages must be *rendered* in the currency of the forum.").  The Court finds that the weight of authority disfavors judgments

7

1  in foreign currency.  *See, e.g.*, *Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F.

2  Supp. 2d 153, 15758 (D.D.C. 2013), *aff'd*, 603 F. App'x 1 (D.C. Cir. 2015) ("Conversion of such

3  foreign currency amounts in dollars at judgment is the norm rather than the exception."); *Elite*

4  *Entm't, Inc. v. Khela Bros. Entm't Inc.*, 396 F. Supp. 2d 680, 694 (E.D. Va. 2005) ("[C]ourts . . .

5  agree that entering judgment in foreign currency is strongly disfavored.").

6  The question then becomes how to convert the judgment the Court will issue into United

7  States dollars.  The Supreme Court has set forth two rules respecting the date that should be used

8  to determine the applicable exchange rate.  Under the "breach day rule," the applicable exchange

9  rate is the one that was in effect the defendants breached their obligations to plaintiff.  *See Linkley*

10  *Invs. v. Jamgotchian*, 2014 WL 12665812, at *4 (C.D. Cal. Apr. 16, 2014) (citing *Hicks v.*

11  *Guinness*, 269 U.S. 71 (1925)).  Under the "judgment day rule," the applicable exchange rate is

12  the rate on the date the court enters judgment.  *Id.*  The Court will apply the "judgment day rule"

13  because Defendants' contractual obligation was "performable in a foreign country in the money of

14  that country."  *Id.* (citing *Shaw, Savill, Albion & Co. v. The Fredericksburg*, 189 F.2d 952, 955 (2d

15  Cir. 1951)).  The contract was consummated between Defendants, all Chinese entities, and

16  Plaintiff's China-affiliate company, and called for payment in RMB.  Applying the judgment day

17  rule, the exchange rate from ¥ to US$ is 1¥ = US$0.16.  Thus, the compensatory damages and

18  prejudgment interest of ¥26,932,191.78 equals US$4,238,553.33.

19  **VI.    ORDER**

20  For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's motion for default

21  judgment is GRANTED IN PART.  The Court AWARDS Plaintiff: ¥25,000,000 in compensatory

22  damages and ¥1,932,191.78 in total prejudgment interest since January 1, 2021, plus

23  US$1,000,000 in exemplary damages.  Judgment will issue in equivalent United States Dollars on

24  the date of this Order:  **$5,238,553.33**.

26  Dated:  February 10, 2022

_____
BETH LABSON FREEMAN
United States District Judge